JD:VTN
F.#2018R00005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

18M274

| IN THE MATTER OF THE SEARCH OF ONE HUAWEI CELLULAR DEVICE, MODEL H891L, IMEI NUMBER 866164020470594, SERIAL NUMBER N9V7N15413002627 | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE <br><br> Case No. _____ |
|---|---|

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Tyler Miceli, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") and have been for approximately two and a half years. I have extensive experience in conducting robbery and fugitive investigations. As a result of my training and experience, I am familiar with the practice of searching for and obtaining electronic evidence to help identify, locate and prosecute defendants. I have participated in dozens of investigations involving search warrants, including warrants for the search of electronic devices.

3. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from my personal participation in this investigation and reports by other law enforcement authorities. When I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence and instrumentalities of the tampering with a witness, in violation of Title 18, United States Code, Section 1512(a)(2).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is one Huawei cellular device, model H891L, IMEI number 866164020470594, serial number N9V7N15413002627, hereinafter the "Device." The Device is currently in the custody of the Bureau of Alcohol, Tobacco and Firearms within the Eastern District of New York.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## PROBABLE CAUSE

7. On or about March 22, 2018, Jamel Robinson was arrested pursuant to a warrant (18-M-206) issued on March 7, 2018, by the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, for a Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951, and possessing, brandishing and discharging a firearm during a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii). As set forth in the complaint, the crimes with which Robinson is charged occurred on December 19, 2017 at a grocery store located at 707 Fulton Street in Brooklyn, New York (the "Store"). The complaint further states that Robinson went to the cashier, brandished a pistol, demanded money, and shot the cashier ("Victim-1") in the foot. Victim-1 opened a cash register and Robinson removed approximately $2,000 cash from the tray and exited the Store. The complaint further states that Victim-1 was shown a photo array and identified Robinson as the perpetrator.

8. On or about March 26, 2018, Tyisha Reid entered the Store and approached Victim-1 and demanded to speak with Victim-1's boss. Victim-1 stated that his boss was not present. Reid then asked Vicitm-1 if Victim-1 was the person who had been shot in the store. When Victim-1 responded affirmatively, Reid stated, in substance, "Why did you have him arrested? He's a working man. He didn't do anything. Give me your boss' number." Victim-1 refused to give REID the phone number of his boss ("Victim-2"). Reid then threatened to Victim-1, in substance, "My husband has guns. You think I don't have

3

any? He shot you in the foot. I'll shoot you in the head." Reid again demanded that Victim-1 provide her with his boss' number and Victim-1 complied.

9. Approximately ten minutes after the above described events, Victim-2 received a phone call on the same phone number that Victim-1 had given to Reid from a phone number ending in 2236. Victim-2 heard the voice of a female who stated, in substance, "Why did you get my husband arrested? He's a working man. When you come to the area, I'm going to shoot you. You think I don't have a gun?"

10. The phone number ending in 2236 is the phone number of Reid. On or about January 29, 2018, Reid went to the 88th Precinct in Brooklyn, New York, to report an unrelated crime. At that time, she provided her phone number, which is the same phone number ending in 2236 that was used to call Victim-2. She further stated on January 29, 2018, that she is the wife of Jamel Robinson.

11. Victim-1 and Victim-2 are victims and witnesses to the armed robbery that occurred on December 19, 2017, alleged to have been committed by Reid's husband, Jamel Robinson. To date, no indictment has been returned against Robinson for said crime. In my training and experience as a law enforcement officer, the nature and timing of Reid's threats to shoot Victim-1 and Victim-2 were made with the intention to dissuade and prevent them from testifying in an official proceeding that could lead to an indictment against Robinson.

12. On March 28, 2018, Reid was arrested pursuant to a warrant for her arrest (18-M-259) issued on March 27, 2018, by the Honorable Steven M. Gold, United States Magistrate Judge for the Eastern District of New York, for tampering with a witness, in

violation of Title 18, United States Code, Section 1512(a)(2). At the time of her arrest, Reid had the Device in her possession. The Device was recovered from Reid by ATF and it is currently in the lawful possession of the ATF within the Eastern District of New York.

13. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other

5

information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the

ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable

storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

15. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

9

portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

10

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Tyler Miceli
Special Agent
Bureau of Alcohol, Tobacco and Firearms

Subscribed and sworn to before me
on March 30, 2018:

_____    s/Pollak
THE HONC                             AK
UNITED S                             GE
EASTERN L

11

## **ATTACHMENT A**

The property to be searched is a Huawei cellular device, model H891L, IMEI number 866164020470594, serial number N9V7N15413002627, hereinafter the "Device." The Device is currently in the custody of the Bureau of Alcohol, Tobacco and Firearms within the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1512(a)(2) and Jamel Robinson and any co-conspirator(s) of Jamel Robinson:

   a. all records and information on the Device, including names and telephone numbers, as well as the contents of all call logs, text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, Facebook or other social media posts or messages, Internet activity (including browser history, web page logs and search terms entered by the user), and other electronic media constituting evidence, fruits or instrumentalities of the above-listed offenses;

   b. all contact lists;

   c. any information recording the whereabouts of Tyisha Reid and any conspirator(s) on March 26, 2018;

   d. any information recording the whereabouts of Jamel Robinson and any co-conspirator(s) on December 19, 2017;

   e. any information regarding the relationship between Tyisha Reid and Jamel Robinson;

   f. passwords, encryption keys and other access devices that may be necessary to access the Device; and

  g. contextual information necessary to understand the evidence described in this attachment.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.